United States District Court
Southern District of Texas
**ENTERED**
January 09, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| KENNETH SCOTT, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:17-CV-382 |
| | § | |
| ISAAC KWABENA KWARTENG, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION**
**TO DISMISS CERTAIN CLAIMS AND TO DENY**
**DEFENDANTS' MOTIONS TO DISMISS**

In this prisoner civil rights action, Plaintiff Kenneth Scott asserts claims of deliberate indifference, retaliation, and other constitutional violations. Presently before the Court are a Motion to Dismiss filed by Defendant Philip Sifuentes (D.E. 15) and a Motion to Dismiss filed by Defendants Isaac Kwabena Kwarteng and Tanya Lawson (D.E. 17). For the reasons stated herein, it is respectfully recommended that Plaintiff's claims of medical malpractice, theft, and collusion be DISMISSED as frivolous and/or for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B). It is further respectfully recommended that the motions to dismiss (D.E. 15, 17) be DENIED in their entirety.

## I.   JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

## II.   PROCEDURAL BACKGROUND

In this civil rights action, Plaintiff sues the following individual defendants: (1) Dr. Isaac Kwabena Kwarteng; (2) Charge Nurse Tanya Lawson; and (3) Senior Warden Philip Sifuentes.  (D.E. 1, p. 3).  Plaintiff alleges that he suffers from serious spinal injuries.  He further alleges that Dr. Kwarteng and Nurse Lawson removed from Plaintiff's possession certain surgeon-ordered medical devices which protect the spine. According to Plaintiff, Defendants Kwarteng and Lawson directed other medical personnel not to return these items to Plaintiff even though Plaintiff faced increased pain in the affected areas.  Plaintiff's medical restrictions also were cancelled by Defendants.

Plaintiff alleges that Warden Sifuentes was notified of the issues involving Plaintiff's medical devices but did nothing to remedy the matter, such as transferring him to a prison facility capable of handling his medical issues.  Plaintiff claims that Defendants' actions amount to deliberate indifference to his health and safety in violation of the Eighth Amendment.  (D.E. 1, p. 5).  In support of these claims, Plaintiff asserts that Defendants denied him the use of medical devices for his serious spinal injuries and placed him in a housing situation where he has a greater risk of falling down and suffering serious injury.  Plaintiff further asserts claims of retaliation, medical malpractice, theft, and collusion.  Plaintiff seeks injunctive relief as follows: (1) return of the medical braces and restrictions; and (2) transfer to another prison where he can receive proper medical care.  (D.E. 1, p. 4).

On April 19, 2018, a *Spears*[1] hearing was conducted.   The next day, the undersigned ordered service of Plaintiff's complaint on Defendants.  (D.E. 14).  Warden Sifuentes filed a motion to dismiss Plaintiff's claims against him, contending that Plaintiff has failed to exhaust his available remedies and that he has failed to state a claim for relief.  (D.E. 15).  Defendants Kwarteng and Lawson also moved to dismiss Plaintiff's claims, contending that: (1) this Court lacks subject matter jurisdiction over any state law claims that may have been raised in Plaintiff's complaint; (2) Plaintiff has failed to exhaust his available remedies; (2) Plaintiff's allegations fail to state a claim for relief; (4) they are entitled to qualified immunity; and (5) Plaintiff is not entitled to the injunctive relief he seeks.  (D.E. 17).  Plaintiff has responded to both motions to dismiss. (D.E. 25, 26).

On June 1, 2018, Plaintiff filed a motion for preliminary injunction.  (D.E. 16). Plaintiff sought a court order directing Warden Sifuentes either to move Plaintiff to the McConnell Unit's medical housing area or to transfer him to a prison facility equipped to deal with his spinal injuries.  (D.E. 16, p. 4).  The undersigned ordered Defendants to respond to Plaintiff's motion and to file a *Martinez*[2] report.  (D.E. 22, 29).  On August 13, 2018, Defendants filed their Joint *Martinez* Report (D.E. 31) as well as their responses in opposition to Plaintiff's Motion for Preliminary Injunction.  (D.E. 33, 35).  On August

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

[2] *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *Cay v. Estelle*, 789 F.2d 318, 323 n. 4 (5th Cir. 1986). *See also Cay v. Estelle,* 789 F.2d 318, 323 n. 4 (5th Cir.1986) (Fifth Circuit approved of the use of *Martinez* Reports in order to develop the factual basis of inmate claims).

29, 2018, Senior District Judge Hilda G. Tagle denied Plaintiff's motion for preliminary injunctive relief.  (D.E. 38).

## III.   PLAINTIFF'S ALLEGATIONS.

Plaintiff made the following allegations relevant to the pending motions to dismiss either in his original Complaint (D.E. 1) or at the *Spears* hearing.  Plaintiff suffers from spine and knee injuries arising from a difficult parachute landing in 1982.  Plaintiff's spinal issues affect both his neck and back.

Plaintiff has been housed at the McConnell Unit for the last 22 years.  He has spent the last two years attempting to obtain adequate medical attention for his medical issues.  Approximately two years ago, doctors at the Galveston Hospital issued Plaintiff a lumbar support corset and collar.  After using these medical devices for about five months, Plaintiff was involved in an incident that ultimately resulted in the confiscation of his medical devices.  As he was operating the church's audio/visual system at a church event, one of the security officers at the church event was engaging in lesbian conduct which Plaintiff viewed as being disrespectful.  Plaintiff filed a grievance against the security officer who then proceeded to formally notify the unit's medical department that Plaintiff had been running around and lifting weights and heavy objects beyond his restrictions.

Dr. Kwarteng and Nurse Lawson sent security officers to remove Plaintiff from the church's service and take Plaintiff's medical braces from him.   Dr. Kwarteng and Nurse Lawson informed Plaintiff that the security officer had reported Plaintiff as violating his medical restrictions.  These defendants took Plaintiff's braces and removed

4 / 24

his medical restrictions.  These defendants also ordered the assigned physicians assistants not to return these items even though Plaintiff faced increased pain to the affected areas.

Plaintiff filed grievances with respect to the actions taken against him by Dr. Kwarteng and Nurse Lawson.  These two defendants answered the grievances and denied them.  Plaintiff states that he received relief at the Step 2 level on the bases that Dr. Kwarteng and Lawson should not have reviewed his Step 1 grievances.   Arrangements were made to send Plaintiff back to Galveston.

Two months after losing his first set of braces, TDCJ reissued back and collar support devices to Plaintiff.  A female officer, however, saw Plaintiff with his new devices and called the unit's medical department to report that Plaintiff had "altered" his medical braces.  Security was called to confiscate Plaintiff's new braces.

According to Plaintiff, Dr. Kwarteng and Nurse Lawson retaliated against him by intentionally delaying medical care to Plaintiff.  These delays would range from three to six weeks following the dates Plaintiff requested his medical care.  Dr. Kwarteng and Nurse Lawson Defendants also committed theft by confiscating the medical devices which were Plaintiff's personal property.   Plaintiff, however, has not filed any lawsuits in state court with regard to the confiscation of his property.

Plaintiff notified Warden Sifuentes about the issues involving Plaintiff's medical devices, but Warden Sifuentes did nothing to rectify the matter.  Rather than assist Plaintiff, Warden Sifuentes placed Plaintiff in administrative segregation based on the actions taken by the security officer in reporting Plaintiff to medical.  Plaintiff's placement in segregation, however, violates his medical housing restrictions.

Furthermore, Plaintiff has received only 48 showers in 123 days in segregation, and officers have refused to escort Plaintiff to the medical shower and properly assist him. Plaintiff loses his balance on multiple occasions because he has no device like a walker to assist him in maintaining balance.  Plaintiff has injured himself on several occasions after falling down.

Despite orders from Galveston doctors that Plaintiff be medically unassigned, this work restriction ended on  February 10, 2018.  Plaintiff also is not properly housed at a single-level facility and is forced to walk lengths greater than his walking limit of 50 yards.  Furthermore, Dr. Kwarteng has refused to provide Plaintiff with ground floor and bottom-bunk restrictions.

Plaintiff mailed to this Court a letter, dated January 12, 2018, which informed the Court that he was scheduled to undergo surgery on his spinal cord in March 2018.  (D.E. 12, p. 1).  In a letter dated March 6, 2018, Plaintiff states that, since filing his original complaint, he was moved from general population to administrative segregation.  (D.E. 13, p. 1).  Plaintiff reiterates that his repeated requests to be transferred to another prison have been either ignored or denied.  (D.E. 13, p. 2).  According to Plaintiff, an orthopedic surgeon notified the McConnell Unit's medical department on August 22, 2017, that Plaintiff should be moved to another facility closer to UTMB-Galveston but that Dr. Kwarteng refused to act upon it.  (D.E. 13, p. 3).

Plaintiff's surgery did not take place in March.  During an eight-day hospital stay in early April 2018, Plaintiff was informed that his spinal injuries had increased in severity.  Plaintiff suffers from continuous pain, and the doctor at Galveston prescribed

Plaintiff certain specific medications.  Plaintiff also underwent a procedure called a spinal cord injury intervention to revitalize some damaged cartilage.  The Galveston doctors also ordered for Plaintiff a hard-shelled minerva brace and lumbar corset.  Dr. Kwarteng, however, refuses to adhere to these orders on the grounds that he runs the medical unit as opposed to the Galveston doctors.  Dr. Kwarteng further indicated that the neck brace ordered by Galveston medical staff would just weaken Plaintiff's neck area.  Nevertheless, TDCJ has issued Plaintiff a third set of basic neck and back braces.  These braces are inadequate for Plaintiff's medical needs.

## IV.   DISCUSSION

### A.   Dismissal Under Section 1915(e)(2)(B)

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law.  *Nelson v. Campbell*, 541 U.S. 637, 643 (2004).  To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988).

Section 1915(e)(2)(B) mandates dismissal "at any time" if the court determines that the action "fails to state a claim on which relief may be granted" or "is frivolous or malicious." 28 U.S.C. 1915(e)(2)(B).  An action may be dismissed for failure to state a claim when the complaint does not plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. The complaint must be liberally construed in favor of the prisoner and the truth of all pleaded facts must be assumed. *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002).

A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998).

In his original complaint, Plaintiff lists claims of medical malpractice, theft, and collusion against Defendants. (D.E. 1, p. 3). Defendants Kwarteng and Lawson construe these claims in their motion to dismiss as common-law torts arising under state law. (D.E. 17, p. 2). Plaintiff, however, clarifies in his response to this motion that his claims of medical malpractice, theft, and collusion arise from violations of his constitutional rights and are cognizable under § 1983. (D.E. 26, p. 2). The undersigned agrees with Plaintiff and construes his claims not as state law tort claims but as constitutional claims under § 1983. As discussed below, each of these claims should be dismissed as frivolous and/or for failure to state a claim for relief.

### *(1) Medical Malpractice*

Plaintiff first asserts a claim of medical malpractice against Defendant Kwarteng. (D.E. 1, p. 3). Medical malpractice, "however, is not an issue of federal constitutional dimension." *Chacon v. Director UTMB CMC*, No. G-16-0161, 2018 WL 3687966, at *3

(S.D. Tex. Aug. 1, 2018) (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). Plaintiff's allegations of medical malpractice, therefore, are insufficient to state a claim for relief against Dr. Kwarteng under § 1983.[3]   Accordingly, the undersigned recommends that Plaintiff's medical malpractice claim under § 1983 be dismissed pursuant to § 1915(e)(2)(B).

### (2)  *Theft*

Plaintiff clarifies that his theft claim is actually a due process claim.  (D.E. 26, p. 4).  He claims that his due process rights were violated by Defendants Kwarteng and Lawson when they ordered the taking of his medical neck and back braces.  (D.E. 26, p. 4).

The Fourteenth Amendment of the Constitution provides that no State shall "deprive any person of life, liberty, or property without due process of law."  U.S. Const. amend. XIV § 1.   The Supreme Court has held that a random and unauthorized intentional deprivation of property does not violate the Due Process Clause if the State provides an adequate post-deprivation remedy.  *See Hudson v. Palmer*, 468 U.S. 517, 534-35 (1984); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996).  A claimant must either take advantage of the available remedies or show that the available remedies are inadequate. *Hudson*, 468 U.S. at 534-35.

---

[3] Rather than a mere claim of medical malpractice, Plaintiff alleges in his original complaint and at the *Spears* hearing that all defendants, including Dr. Kwarteng have acted with deliberate indifference to his health.  He further contends in his response to Defendant Kwarteng and Lawson's motion to dismiss that their actions violated his constitutional rights through their acts of deliberate indifference.  Such claims arising under the Eighth Amendment will be addressed below.

Texas law provides Plaintiff with available post-deprivation remedies. First, Texas law allows recovery of monetary damages for the loss of property that has been taken without authorization. *See Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994) (in Texas, the tort of conversion fulfills this requirement); *see also Beam v. Voss*, 568 S.W.2d 413, 420-21 (Tex. Civ. App.– San Antonio 1978, no writ) (conversion is the unauthorized and unlawful assumption and exercise of dominion and control over the personal property of another, to the exclusion of, or inconsistent with the owner's rights). In addition, state law specifically provides that inmates may recover up to $500.00 on a claim that the TDCJ lost or damaged personal property. *See* Tex. Gov't Code § 501.007.

Because Texas law provides an adequate post-deprivation remedy, Plaintiff's loss of his medical devices through confiscation by prison officials does not state a violation of the Due Process Clause. *See Hudson*, 468 U.S. at 536 (noting that, even when a prisoner's property was intentionally destroyed, such destruction did not violate the Fourteenth Amendment because state law provided the prisoner with an adequate post-deprivation remedy). A prisoner-plaintiff may bring suit in federal court for property loss only if relief is denied in state court on grounds other than the merits of his claim. *See Thompson*, 709 F.2d at 383 n.3. The burden is on the inmate to show that the post-deprivation remedy is inadequate. *Myers*, 97 F.3d at 94.

Plaintiff testified at the *Spears* hearing that he has not filed any lawsuits in state court with regard to the confiscation of his property. Because Plaintiff has not pursued his available state court remedies, he cannot allege that the post-deprivation remedy available to him is inadequate. Thus, Plaintiff's claim for property loss based on the

taking of his medical devices fails to state a cognizable constitutional claim. Accordingly, the undersigned recommends that Plaintiff's due process claim under § 1983 be dismissed pursuant to § 1915(e)(2)(B).

### (3) Collusion

Plaintiff alleges that Defendants Lawson and Sifuentes engaged in collusion. (D.E. 1, p. 3). Such claim is liberally construed as a civil conspiracy claim. To allege a claim of conspiracy to deprive one of his constitutional rights, a plaintiff must allege, (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or deprivation of any right or privilege of a citizen of the United States. *Hilliard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994). "A plaintiff must also 'allege specific facts to show an agreement.'" *Tebo v. Tebo*, 550 F.3d 492, 496 (5th Cir. 2008) (quoting *Priester v. Lowndes County*, 354 F.3d 414, 421 (5th Cir. 2004)).

Plaintiff has alleged no specific facts, other than his personal belief, that there was a conspiracy to deprive Plaintiff of his constitutional rights. *See McAfee v. 5th Circuit Judges*, 884 F.2d 221, 222 (5th Cir. 1989) (conclusory allegations lacking reference to material facts are not sufficient to state a claim of conspiracy under section 1983). Plaintiff otherwise alleges no facts referencing the existence of an agreement between Defendants Lawson and Sifuentes to harm Plaintiff. Accordingly, the undersigned recommends that Plaintiff's civil conspiracy claim under § 1983 be dismissed pursuant to § 1915(e)(2)(B).

### B.    Applicable Legal Standards on a Motion to Dismiss

The standard of review regarding a dismissal under Federal Rule of Civil Procedure 12(b)(6) under is identical to the standard of review for dismissing a case under §1915(e)(2)(B).  *See* Fed. R. Civ. P. 12(b)(6) (providing for dismissal of an action for "failure to state a claim upon which relief can be granted").  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its *face*.'"  *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570).  A claim is said to be plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal,* 556 U.S. at 678.  When considering a motion to dismiss, district courts are "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

### *(1)  Exhaustion*

Defendants move to dismiss Plaintiff's deliberate indifference claims against them for failure to exhaust his administrative remedies.  (D.E. 16, pp. 3-4, D.E. 17, pp. 4-5).  The Prison Litigation Reform Act, 42 U.S.C. § 1997e, provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The exhaustion requirement applies to all inmate suits about prison life, whether involving general circumstances or specific incidents. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Clifford v. Gibbs*, 298 F.3d 328, 330 (5th Cir. 2002). Moreover, a prisoner is required to exhaust his administrative remedies even if damages are unavailable through the grievance process. *Booth v. Churner*, 532 U.S. 731, 734 (2001); *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). A prisoner must complete the administrative review process in accordance with all procedural rules, including deadlines, as a precondition to bringing suit in federal court. *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). Because exhaustion is an affirmative defense, inmates are not required to plead or demonstrate exhaustion in their complaints. *Jones v. Bock*, 549 U.S. 199, 215 (2006).

The TDCJ provides a two-step procedure for presenting administrative grievances. *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999) (per curiam). Step 1 requires the inmate to present an administrative grievance at his unit within fifteen days from the date of the complained-of incident. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). The inmate should then receive a response from the unit official, and if unsatisfied with the response, the inmate has fifteen days to appeal by filing a Step 2 grievance, which is handled at the state level. *Id.* The Fifth Circuit requires that both steps be completed in order to file suit in federal court. *Id* at 515-16 ("[A] prisoner must pursue a grievance through both steps for it to be considered exhausted."). *See also Dillion v. Rogers,* 596 F.3d 260, 268 (5th Cir. 2010) ("under our strict approach, we have found that mere

'substantial compliance' with administrative remedy procedures does not satisfy exhaustion; instead, we have required prisoners to exhaust available remedies properly.").

Defendants Kwarteng and Lawson assert in their motion to dismiss that Plaintiff failed to attach any grievances to his complaint to demonstrate that he had exhausted his administrative remedies.  (D.E. 17, p. 5).  Defendants all note that, when Plaintiff was asked on the § 1983 form whether he had exhausted all grievance steps, Plaintiff answered "not applicable."  (D.E. 15, p. 3; D.E. 17, p. 5).  Plaintiff counters that he is not required to demonstrate in his complaint that he has exhausted his administrative remedies.  (D.E. 25, pp. 3-4; D.E. 17, p. 5).

Plaintiff is correct that he is not required to "affirmatively plead or demonstrate exhaustion."  *Land v. Gage*, 693 F. App'x  358, 359 (5th Cir. 2017) (citing *Jones*, 549 U.S. at 213-14).  Indeed, as noted above, exhaustion is an affirmative defense that must be pleaded by the defendant.  *Jones*, 549 U.S. at 215.  Defendants, however, ask the Court to rely on information solely gleaned from Plaintiff's § 1983 form complaint to conclude that Plaintiff has failed to exhaust his administrative remedies.  Such reliance impermissibly places "the onus on [Plaintiff] to affirmatively plead and demonstrate exhaustion."  *Land*, 693 F.3d at 359.

The Fifth Circuit recognizes that a district court still may "dismiss a case . . . for failure to state a claim, predicated on failure to exhaust, if the complaint itself makes clear that the prisoner failed to exhaust."  *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007).  A review of Plaintiff's complaint and testimony at his *Spears* hearing does not make clear that he has failed to exhaust his administrative remedies.  In fact, Plaintiff's

14 / 24

testimony at the *Spears* hearing indicates that he has filed Step 1 and Step 2 grievances in which he advanced complaints similar to the claims raised in this case. Accordingly, when accepting as true Plaintiff's facts as set forth in his original complaint and at the *Spears* hearing, Defendants' motions to dismiss Plaintiff's claims for failure to exhaust administrative remedies should be denied.[4]

### (2)  *Claims on the Merits*

#### *Deliberate Indifference to Serious Medical Needs*

Prisoners are protected from cruel and unusual punishment by the Eighth Amendment. While not mandating a certain level of medical care for prisoners, the Eighth Amendment imposes a duty on prison officials to ensure that inmates receive adequate medical care. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (citing *Farmer*, 511 U.S. at 832). An Eighth Amendment violation occurs when a prison official is deliberately indifferent to an inmate's health and safety. *Farmer*, 511 U.S. at 834.

In order to state a § 1983 claim for denial of adequate medical treatment, a prisoner must allege that prison officials acted with deliberate indifference to serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 105 (1976); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Deliberate indifference requires that prison officials both be aware of specific facts from which the

---

[4] Defendants have attached to their *Martinez* report copies of Plaintiff's grievances record from January 1, 2018 through July 6, 2018. Despite the fact that such copies have been placed into the record, the undersigned notes that this case is still at the pleading stage. *See Denby v. Norwood*, No. 7:13-CV-140, 2016 WL 2937470, at *2 (N.D. Tex. Apr. 26, 2016). Thus, the undersigned does not consider the copies of Plaintiff's records attached to the *Martinez* report for purposes of deciding Defendants' Rule 12(b)(6) motions on either the issue of exhaustion or the merits of Plaintiff's claims.

inference could be drawn that a serious medical need exists and then the prison official, perceiving the risk, must deliberately fail to act. *Farmer*, 511 U.S. at 837.

In the context of medical treatment, the prisoner must show "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted). A "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference [that] *results in substantial harm.*" *Easter*, 467 F.3d at 464 (emphasis in original).

The deliberate indifference standard "is an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346. An inmate may obtain injunctive relief on an Eighth Amendment claim "if he shows that it is necessary in order 'to prevent a substantial risk of serious injury from ripening into actual harm.' " *Atkinson v. Johnson*, 74 F. App'x 365, 367 (5th Cir. 2003) (quoting *Farmer*, 511 U.S. at 845).

Defendants Kwarteng and Lawson contend that they did not act with deliberate indifference to Plaintiff's serious medical needs when they removed his medical restrictions, caused the taking of his medical neck and back braces, and caused delays in Plaintiff receiving proper medical treatment. (D.E. 17, pp. 7-8). Plaintiff's allegations

16 / 24

advanced in his original complaint and at the *Spears* hearing indicate that: (1) Plaintiff suffers from serious spine and knee injuries and that his spinal issues affect both his neck and back; (2) Plaintiff's spinal injuries have increased in severity and caused him continuous pain; (3) Defendants Kwarteng and Lawson ordered the confiscation of Plaintiff's medical back and knee braces on two occasions; (3) Dr. Kwarteng has ignored orders from Galveston doctors to keep Plaintiff medically unassigned and has refused to provide Plaintiff with ground floor and bottom-bunk restrictions; (4) Dr. Kwarteng has refused to comply with the orders of Galveston doctors to provide Plaintiff with a hard-shelled minerva brace and/or lumbar corset; (5) Dr. Kwarteng refused to follow a recommendation from a Galveston Hospital orthopedic surgeon that Plaintiff should be moved to another facility closer to UTMB-Galveston.; and (6) Plaintiff has been moved to administrative segregation without a walker where he has fallen down and hurt himself.

Plaintiff's allegations, taken as true, are sufficient to state a deliberate indifference claim.  His allegations suggest that Defendants Kwarteng and Lawson were aware of Plaintiff's serious back and neck issues and engaged in conduct that disregarded Plaintiff's risk for serious injury.  Plaintiff's allegations against Defendants Kwarteng and Lawson, if true, may constitute deliberate indifference to Plaintiff's serious medical needs.  *See Farmer*, 511 U.S. at 837; *Gobert*, 463 F.3d at 346.  Because Plaintiff has stated a plausible claim of deliberate indifference against Defendants Kwarteng and Lawson, their motion to dismiss (D.E. 17) should be denied as to these claims.

### Deliberate Indifference to Plaintiff's Health

As discussed above, an Eighth Amendment violation occurs when a prison official is deliberately indifferent to an inmate's health and safety. *Farmer*, 511 U.S. at 834. The general test for deliberate indifference has both an objective and subjective prong. Under the objective prong, the inmate "must first prove objective exposure to a substantial risk of serious harm." *Trevino v. Livingston*, No. 3:14-CV-52, 2017 WL 1013089, at *3 (S.D. Tex. Mar. 13, 2017) (citing *Gobert*, 463 F.3d at 345-46). To prove the subjective prong of the deliberate indifference test, the inmate "must show both: (1) that the defendant was aware of facts from which the inference of an excessive risk to the  [inmate's] health or safety could be drawn; and (2) that the defendant actually drew the inference that such potential for harm existed." *Trevino*, 2017 WL 1013089, at *3 (citing *Farmer*, 511 U.S. at 397 and *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999)).

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983). There is no vicarious or *respondeat superior* liability of supervisors under section 1983. *Thompkins v. Belt,* 828 F.2d 298, 303-04 (5th Cir. 1987). *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials). A supervisory official may be held liable only if "(1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps,* 659 F.3d 440, 446 (5th Cir. 2011).

18 / 24

Warden Sifuentes contends in his motion to dismiss that he had no personal involvement with respect to the alleged violations of Plaintiff's constitutional rights. (D.E. 15, p. 4). Warden Sifuentes further contends that he cannot be held liable under the principle of *respondeat superior*. (D.E. 15, p. 5). Plaintiff responds that Warden Sifuentes was apprised on numerous occasions about the violations of Defendants Kwarteng and Lawson, but did nothing to rectify the matter. (D.E. 24, p. 3). Plaintiff further points to Warden Sifuentes's actions in assigning him to administrative segregation where he is unable to move for any distances without a "wheeled walker" and has fallen on numerous occasions due to having trouble maintaining his balance. (D.E. 24, pp. 3-4).

Plaintiff's allegations advanced in his original complaint and at the *Spears* hearing indicate that: (1) Warden  Sifuentes was well aware of Plaintiff's serious spinal issues and the taking of his medical devises; (2) rather than assist Plaintiff, Warden Sifuentes placed Plaintiff in administrative segregation which violated Plaintiff's medical housing restrictions; (3) Plaintiff received an inadequate amount of showers while in administrative segregation; and (4) Plaintiff suffered injuries as he could not maintain his balance in the showers without the aid of a walker.

Plaintiff's allegations, taken as true, are sufficient to state a deliberate indifference claim against Warden Sifuentes. Plaintiff's allegations suggest that Warden Sifuentes was aware of Plaintiff's serious medical issues but nevertheless personally engaged in actions that exacerbated the risk of injury to Plaintiff by placing him in administrative segregation. Because Plaintiff has stated a plausible claim of deliberate indifference

against Warden Sifuentes, his motion to dismiss (D.E. 15) should be denied as to this claim.

## Retaliation

Retaliation is not expressly referred to in the Constitution; however, it is nonetheless actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights.  *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972). Retaliation is actionable "only if the retaliatory act 'is capable of deterring a person of ordinary firmness from further exercising his constitutional rights.'"  *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008) (quoting *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006)).

The purpose of allowing retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights.  *Morris*, 449 F.3d at 686.  Thus, "[a] prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct."  *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995).  "Filing grievances and otherwise complaining about the conduct of correctional officers through proper channels are constitutionally protected activities, and prison officials may not retaliate against inmates for engaging in such protected inmates."  *Reese v. Skinner*, 322 F. App'x 381, 383 (5th Cir. 2009) (citing *Morris*, 449 F.3d at 684).

The Fifth Circuit has emphasized that "prisoners' claims of retaliation are regarded with skepticism and are carefully scrutinized by the courts."  *Adeleke v. Fleckenstein*, 385 F. App'x 386, 387 (5th Cir. 2010) (citing *Woods*, 60 F.3d at 1166).  In

addition, the Fifth Circuit has concluded that some acts, even though they may be motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights. *Morris*, 449 F.3d at 686. Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. *Id.*

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones*, 188 F.3d at 324-25 (citing *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998)). An inmate must allege more than his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted). "Mere conclusory allegations of retaliation will not be enough to withstand a proper motion for dismissal of the claim." *Jones*, 188 F.3d at 325. The inmate must produce direct evidence of motivation or a chronology of events from which retaliation may be inferred. *Id.* In other words, a successful claim of retaliation requires a showing that, but for some retaliatory motive, the complained of adverse incident would not have occurred. *Woods*, 60 F.3d at 1166.

Defendants Kwarteng and Lawson contend that Plaintiff has failed to state a claim of retaliation against them based on allegations they denied him "redress" and delayed his medical care. (D.E. 17, p. 9). Plaintiff responds that these defendants committed acts of retaliation by causing important medical care to not only be delayed but also cancelled. (D.E. 26, p. 7).

Plaintiff alleges that: (1) he filed Step 1 grievances against Dr. Kwarteng and Nurse Lawson, complaining about their conduct in ordering the confiscation of his medical braces; (2) these defendants answered Plaintiff's grievances and denied them; (3) Dr. Kwarteng and Lawson retaliated against Plaintiff for filing grievances against him soon thereafter by intentionally delaying Plaintiff medical care for three to six weeks for his serious spinal condition; (4) Plaintiff's scheduled surgery for March, 2018 was subsequently cancelled; and (5) a spinal procedure was not performed on Plaintiff until early April, 2018.   Accepting these allegations as true, Plaintiff has stated a plausible retaliation claim against Defendants Kwarteng and Lawson.   *See Jackson v. Cain*, 864 F.2d 1235, 1249 (5th Cir. 1989) (recognizing that a prison official may not retaliate against an inmate for using the grievance system).   Because Plaintiff has stated a plausible claim of retaliation against Defendants Kwarteng and Lawson, their motion to dismiss (D.E. 17) should be denied as to this claim.

### (3)   *Qualified Immunity*

Defendants Kwarteng and Lawson contend that they are entitled to qualified immunity which shields them from constitutional liability in their individual capacities. (D.E. 17, pp. 9-10).   The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."   *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). "To discharge this burden, the plaintiff must satisfy a two-prong test. *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005). First, he must claim that the defendant committed a constitutional violation under current law. *Id.* Second, he must claim that the defendant's action was objectively reasonable in light of the law that was clearly established at the time of the complained-of actions. *Id.*

Plaintiff, however, has stated plausible deliberate indifference and retaliation claims against Defendants Kwarteng and Lawson. Based on the allegations in Plaintiff's original complaint, as supplemented by his testimony at the *Spears* hearing, the undersigned cannot conclude at this time that these defendants acted objectively reasonable in light of clearly established law. Because Defendants Kwarteng and Lawson are not entitled to qualified immunity at this time, the undersigned respectfully recommends that their motion to dismiss (D.E. 17) be denied on the issue of qualified immunity as to these defendants.[5]

## V. RECOMMENDATION

For the foregoing reasons, it is respectfully recommended that Plaintiff's claims of medical practice, theft, and collusion be DISMISSED as frivolous and/or for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B). It is further respectfully

---

[5] Any decision to deny the motion to dismiss on the issue of qualified immunity is without prejudice to Defendants Kwarteng and Lawson reasserting same through an appropriate motion for summary judgment. Indeed, the discovery process may reveal additional facts that entitle these defendants to qualified immunity on Plaintiff's claims. *See Zollicoffer v. Livingston*, 169 F. Supp. 3d 687, 698 (S.D. Tex. 2016).

recommended that the motions to dismiss filed by Defendants Kwarteng, Lawson, and Sifuentes (D.E. 15, 17) be DENIED in their entirety.

Respectfully submitted this 9th day of January, 2019.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).